No. A-CV-16-91
# Supreme Court of the Navajo Nation

**Lois Yazzie, Appellant,**
v.
**Joe M. Yazzie, Appellee.**
**Decided August 25, 1992**

## OPINION

Before YAZZIE, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Phillip O. Multine, Esq., DNA-People's Legal Services, Inc., Tuba City, Navajo Nation (Arizona), for the Appellant; and Robert Curley, Esq., Tuba City, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by BLUEHOUSE, Associate Justice.

This is a case involving alimony. The issues in the case are the following: 1) When may an alimony decree be amended, modified or terminated; 2) Whether the doctrine of laches will bar recovery of alimony payments in arrears; and 3) Whether a spouse who has been awarded alimony is entitled to receive the full amount of payments in arrears.

Our holdings are as follows: 1) A court may not act on its own to amend, modify or terminate alimony; 2) As a general rule the doctrine of laches will not bar a claim for alimony in arrears; and 3) A payor spouse is under an absolute duty to pay the full amount of alimony in arrears.

## I

Lois Yazzie, appellant, and Joe M. Yazzie, appellee, had been married for thirty-six years when their divorce was granted on March 16, 1982 by the Window Rock District Court. At that time, Joe was ordered to make alimony payments in the amount of $50.00 per month. Joe has never made any of the payments. On June 27, 1990, Lois filed a Motion for Order to Show Cause why Joe should not be held in contempt for failure to make any of the court-ordered alimony payments. Lois sought judgment for $4,900.00 (the entire amount in arrears) in unpaid alimony and to have Joe found in contempt of court and fined or incarcerated.

After several continuances, a hearing was held on February 6, 1991 in the Tuba City Family Court to consider the issue of non-payment of alimony. The court made the following findings: (1) On March 16, 1982, Joe was ordered to pay $50.00 per month alimony; (2) Alimony was never paid resulting in arrear-

age of $4,900.00; (3) Joe has remarried and Lois has not; and (4) The life span of the alimony awarded by the divorce decree is indeterminate. In accordance with these findings the court found Joe guilty of contempt of court and fined him $100.00. The court also awarded Lois $1,350.00 in alimony arrearage and terminated future alimony payments. Lois appealed the discontinued alimony and the award of arrearage because it was less than the amount demanded in her complaint. The contempt of court holding was not appealed.

## II

### A

The first issue is whether, absent a petition by an interested spouse, a court may act on its own to amend, modify or terminate alimony payments. At the outset we affirm the power of the court to amend, modify or terminate alimony payments. *Sells v. Sells*, 5 Nav. R. 104 (1986). That power, however, is not unlimited. When a court acts to amend, modify or terminate the alimony payments that a spouse receives, it is acting upon a source of income that the divorce court has determined is a necessity. Any modification affects the economic expectations of the former spouses. The payor spouse expects to pay a certain amount each month and the payee spouse expects to receive a certain amount. The expectations of each spouse may not be arbitrarily affected by the court.

A petition explaining why the alimony decree should be changed must first be filed with the trial court before it can act to modify the amount of alimony payments. The other spouse must have notice of the petition and be given an opportunity to respond to the proposed changes consistent with due process requirements. We held in *Begay v. Navajo Nation*, 6 Nav. R. 20, 25 (1988), that basic due process requires giving a party an opportunity to present reasons why a proposed action should not be carried through. The court has a duty to consider all pertinent facts before deciding whether to modify a decree. In this case, neither party filed a petition requesting modification of the amount of alimony payments nor was given notice of and an opportunity to respond to the changes that the court initiated on its own.

To merit modifying an alimony order, there must be proof of changed circumstances which must be both substantial and continuing. This Court dealt with a similar issue in the area of child custody. In order to modify a custody decree, a non-custodial parent must allege and show a substantial change of circumstances. *Barber v. Barber*, 5 Nav. R. 9, 12 (1984) (quoting *Lente v. Notah*, 3 Nav. R. 72 (1982)). The trial court has great discretion to determine whether to make changes. In any event, either the remarriage or the death of the payee spouse will terminate the obligation to make alimony payments. We hold that a court may not act on its own to amend, modify, or terminate a decree for alimony payments. A petition must first be filed requesting modification and the non-petitioning spouse must be given notice and an opportunity to be heard on the matter.

In this case, neither party filed a petition asking for changes. When Lois filed the action against Joe her only request was to have the divorce decree enforced. The court did not give the parties notice of what it intended to do. The court heard the matter and rendered its decision without first giving either party an adequate opportunity to formulate their own desired changes and support their arguments. Consequently, neither party was given an adequate opportunity to be heard on the matter. Instead, it appears that Lois was penalized for bringing her suit for enforcement of the divorce decree — her alimony was arbitrarily terminated and the arrearage reduced without prior notice. The family court clearly abused its discretion.

B

The next issue is whether the doctrine of laches should bar a claim for unpaid alimony. Alimony is based upon evidence which shows the need of the payee spouse and the ability to pay of the payor spouse. This need is met by the payments made by the payor spouse to the payee spouse. In the Navajo Nation, the payments are often the sole source of income for the payee spouse. Mere passage of time does not erase this need.

Upon entry of the divorce decree, both the payor spouse and the payee spouse are on notice of the court's order awarding alimony and the amount. In this case both parties were properly informed of the order of the trial court. Joe knew of his duty to make the payments and Lois knew of the obligation due to her. The payor spouse is always under a court-ordered duty to make the payments in full and on time. In this case, Joe never made an effort to fulfill his duty by making even the first payment. A payor spouse, on notice, may not simply refuse to pay, wait out the order to comply and later assert laches to bar the claim of the payee spouse. This is what Joe has attempted to do. To allow delinquent spouses to wait out their obligations encourages irresponsibility and that would be against public policy. An alimony decree is a court-ordered obligation and should be treated with the utmost respect. We will not allow those decrees to go unenforced.

C

The final issue is whether a spouse is entitled to the full amount of alimony in arrears. Alimony payments, as they become due, become vested. In other words, the debt becomes absolute and cumulative. The payor spouse must pay the full arreage and it may not be retroactively modified. Allowing the payor spouse to be relieved of his obligation would be unfair and encourage non-compliance with alimony decrees. Denying the payee spouse the payments due to her would create hardship and deprive her of funds that are rightfully hers. Alimony awards are based on need, they are not rewards or bonuses or gifts to be revoked without penalty. The payment of alimony is a court-ordered obligation which must be complied with. If the payor spouse fails to satisfy that duty, he may be held in

contempt and an appropriate remedy to enforce payment may be imposed.

For the foregoing reasons the orders of the trial court awarding only $1,350.00 for alimony in arrears and the termination of alimony payments are reversed. Joe shall be ordered to pay the full amount in arrears and to continue to pay the amount for alimony as set in the divorce decree dated March 16, 1982. The trial court shall file an order consistent with this opinion.